CERVECERÍA INDIA, INC., Plaintiff and Appellant, *v.* MUNICIPALITY OF MAYAGÜEZ, Defendant and Appellee.

No. 11110. Argued July 1, 1954.—Decided August 9, 1954.

*J. Alemañy Sosa* for appellant.  *Luis F. Candal* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Cervecería India, Inc., a domestic corporation, has appealed from an adverse judgment rendered by the Mayagüez Part of the Superior Court, denying its right to a refund of taxes paid under protest to the Municipality of Mayagüez, by way of municipal licenses for the fiscal years 1947–48 and 1948–49, computed on the volume of the sales of beer transacted during those years.

The appellant is engaged in the Municipality of Mayagüez in the manufacture of beer, malt, and carbonated water, and in the wholesale of its products in its own factory or plant.  From the beginning it took the position that the beer industry is exempt from the payment of the municipal license tax.[1]  The lower court decided this contention adversely, thereby giving rise to the first assignment of error made in this appeal.

---

[1] Appellant's challenge of the license taxes for the fiscal years 1947–48 and 1948–49 is not based on the ground that beer was an article already subject to taxation under an insular law— § 4, subd. 4, and § 6 of the Alcoholic Beverages Act of Puerto Rico, No. 115, approved May 15, 1936, as amended—and that therefore the municipality lacks

■■■ Act No. 26 of March 28, 1914, known as the License Tax Act (Spec. Sess. Laws, p. 174), confers authority on the municipal councils, now municipal assemblies, to levy and collect taxes by way of license, on those persons or entities engaged in any of the *businesses* or *industries* mentioned in § 2 of that Act, which provides as follows:

"Section 2.—That the businesses or industries upon which the taxes herein provided may be levied, shall be the following:

"*Group A.*—Wholesale stores, mixed stores, dry goods stores, fancy grocery stores, grocery stores, provision stores, furniture stores, pharmacies, drug stores, hardware stores, hat stores, shoe stores, men's furnishing stores, book stores or book binding establishments, bazaars, bicycle or bicycle supply stores, notion and trinket stores, cafes, hotels, restaurants, jewelry stores, establishments for the sale of automobiles or automobile supplies or for the storage or repair of automobiles, stationery stores, confectionery stores, candy stores, ice cream parlors, establishments for the sale of optical, dental or electrical goods, establishments for the sale of lumber or woodwork, boarding houses, eating houses, milk stalls, public billiard parlors, or bowling alleys, theaters, moving picture shows and similar establishments for public amusement, watchmakers' shops, shirt-making establishments, shops repairing shoes by machinery, carpenter shops, steam or electric laundries, ice factories, tinsmith shops, bakeries, establishments for the sale of plumbing supplies, barber shops, photographing establishments, pawn shops, undertaking establishments, job printing or publishing establishments, horseshoeing establishments, boarding and livery stables, the transportation for hire or persons or freight by automobiles, carts, wagons, coaches or buggies, express businesses, peddlers, cleaning establishments, dyeing establishments and blacksmith shops.

"*Group B.*—Banks, private banking houses, electric light or power plants, railroads, electric railways, horse railways, pub-

---

authority to tax it in the form of a license tax. Section 92 of the Beverages Act; *San Miguel & Cía.* v. *Diez de Andino, Treas.*, 71 P.R.R. 320; *Compañía Azucarera del Toa* v. *Municipality*, 76 P.R.R. 310. We realize, however, that if appellant's business or industry were covered by the License Tax Act, the municipality would have authority to levy a tax by way of license from and after the operation of Act No. 437 of May 15, 1951 (Sess. Laws, p. 1254). *A. J. Tristani Sucrs., Inc.* v. *Municipality*, 76 P.R.R. 710.

lic warehouses, race-tracks, telephone companies, lime kilns, foundries, lithographing establishments, hydraulic or electric power saw mills, machine shops, tanneries, coffee cleaning mills, private docks, commercial advertising companies or agencies, hat factories operated by machinery, canning and preserving factories, and factories manufacturing any of the following products: Chocolate, trunks, matches, soda and carbonated water, soup-paste, soap, candles, mattresses, bay oil, castor oil, cocoanut oil, harnesses, saddles, carts, carriages, wagons, mosaic, tile and other cement products, brick, gas, earthenware or cigar-boxes.

"*Group C.*—The businesses of sugar and molasses mills, brokers, commission merchants, agents with permanent offices and real estate agents."

The lower court held that appellant's business (beer industry) is comprised within the term "wholesale stores" employed at the beginning of Group A of § 2, *supra*. Its reasoning in this respect is as follows:

"Section 2 of the said Act enumerates and classifies the '*businesses or industries upon which the taxes herein provided may be levied*,' and among these, under Group A, are '*wholesale stores*'. It seems clear, and we so conclude, that the beer-production plant of plaintiff corporation and its annexes and dependencies used in the sale of that product constitute an industrial and commercial *establishment*, within the general and popular meaning of that term. *Section 15 of the Civil Code, 1930 ed.* See the Dictionary of the Spanish Language, 1947 ed., published by the Spanish Royal Academy, where the term *establishment* is defined, in its fifth connotation, as a 'place where an industry or profession is habitually carried on', * and the term *industry,* in its second connotation, as the 'sum of material operations performed for the obtainment, transformation, or transportation of one or several natural products.' The fact that plaintiff's business is *wholesale* was stipulated by the parties."

---

* Reporter's note. Our translation. Copied literally, the definitions read: *Establecimiento: 'lugar donde habitualmente se ejerce una industria o profesión'*; and the term *industria: 'conjunto de operaciones materiales ejecutadas para la obtención, transformación o transporte de uno o varios productos naturales'*.

· We agree that appellant's beer-production factory or plant is an *industrial establishment* within the usual and popular meaning of those words. However, the fact that the said plant is an *establishment* and that the stipulation of the parties is that "plaintiff has always been engaged in the manufacture and wholesale of beer," does not by itself indicate that the said factory or plant is covered by the License Tax Act. The term "establishment" used in the said Act refers to "wholesale" establishments. The term "wholesale" does not apply to industries but to commerce. As correctly put by appellant, there is no such thing as wholesale or retail industries; they are either large or small depending on the volume of production. In the *Enciclopedia Jurídica Española*, Vol. 22, p. 123, the term *wholesaler* (*mayorista*) is defined as follows: "Wholesaler.—A merchant or business partnership whose sales are made only by wholesale, and usually by means of contracts and on installment payments." ■ Therefore, the term "wholesale establishments" includes commercial but not industrial establishments. It could be argued, however, that appellant's business has two phases, to wit: (1) the manufacture of beer, and (2) its sale by wholesale, and that the latter phase comes within the term "wholesale establishments." It seems that this argument should not prevail because from the text itself of the Act it appears that such was not the legislative intent. The enumeration of the businesses and industries subject to license tax starts in Group A with *wholesale stores*, and then follow other establishments such as mixed stores, dry goods stores, fancy grocery stores, provision stores, furniture stores, pharmacies, etc., namely, retail commercial establishments. This indicates that the term "wholesale establishments" refers to commercial establishments. The only exception included in that group is ice

factories. However, factories which are considered as industries are enumerated under Group B. Beer factories or plants are not included among them. *Cf. Yabucoa Sugar Co.* v. *Municipality,* 44 P.R.R. 336. If all the factories engaged in the wholesale of the articles produced or manufactured by them were included under the term "wholesale stores" mentioned in Group A, it would then be unnecessary to enumerate in the law the other factories or industries which are subject to license tax, such as ice factories, canning and preserving factories, and factories which manufacture chocolate, trunks, matches, soda, and carbonated water, soup-paste, soap, candles, etc. It is significant that by enacting the License Tax Act the Legislature conferred authority on the municipalities to levy taxes, and that, therefore, said Act should be strictly construed. If there is reasonable doubt as to the extent of the power so delegated, the doubt must be resolved against the municipality claiming the right to exercise it and the decision must be against the existence of the power. 38 Am. Jur., § 324, p. 17. The License Tax Act, we have seen, enumerates the businesses and industries which may be licensed by a municipal corporation, and the enumeration, if on the whole such appears to be the legislative intent, is exclusive and the other industries or businesses not embraced in the enumeration are therefore excluded from the law. See 38 Am. Jur., § 326, p. 19.

There is subsequent legislation indicating that the legislative intent in enacting the License Tax Act was to subject to the municipal license tax only those businesses or industries enumerated therein. Act No. 99 of May 15, 1931 (Sess. Laws, p. 626), in establishing the Government for the Capital, vested the Board of Commissioners [2] with authority

---

[2] Section 18 of that Act, as amended in other particulars by Act No. 39 of April 28, 1945 (Sess. Laws, p. 124), provides:

"Section 18.—Subject to other provisions of this Act, the Board of Commissioners shall have, among its legislative powers, the following special powers:

to levy reasonable taxes and excises within the jurisdictional limits of the Capital, and it was expressly authorized to include, by means of an ordinance or resolution, any industrial or commercial establishment or agency not enumerated in the License Tax Act of 1914. We agree with appellant that that is a clear indication that there are many other establishments and businesses or industries which were not included in the License Tax Act, and that therefore they are not subject to municipal taxation. To levy and collect municipal license taxes on those establishments, businesses, and industries not embraced in the License Tax Act, the Government of the Capital is authorized, under its organic act, as we have noted, to include by means of resolutions or ordinances these establishments, businesses, and industries excluded from the License Tax Act. It may well be stated that "if it had been the intent of the Legislature to vest the other municipalities with power to tax establishments, businesses, or industries not embraced in the Act of 1914, it would have done so by enacting legislation in the same way it did when it created the Government for the Capital."

On the other hand, the License Tax Act did not contemplate that an industry engaged in the production or manufacture of certain articles should have two independent phases, namely, manufacture and sale. On the contrary, in enumerating the industries subject to license taxes it assumed that they would produce salable articles. This is so because the license tax is levied on the basis of the gross receipts of the industry. Section 3 of the Act provides that the tax shall be paid on the basis of the volume of business

---

"    .    .    .    .    .    .    .    .

"4. To levy reasonable taxes and excises within the jurisdictional limits of the Capital; *Provided*, That for the purpose of applying the Industrial and Commercial License Tax Act approved by the Legislature of Puerto Rico on March 28, 1914, the Board of Commissioners is hereby authorized to include, by means of an ordinance or resolution, any industrial or commercial establishment or agency not enumerated in said Act."

transacted during the year immediately preceding, and § 4 defines "volume of business" as "the gross receipts in any municipality of the business or industry, from its business transactions in Puerto Rico, . . ." It is crystal-clear that the industry has no gross receipts if it does not sell the products manufactured or produced by it. This strengthens further the contention that the term "wholesale store" does not include industries merely because they sell the articles manufactured or produced by them.

In view of the foregoing, we hold that the beer industry is not subject to taxation by way of a municipal license, and, consequently, that the lower court erred in not ordering the refund sought by appellant.

The judgment appealed from will be reversed and another rendered instead ordering the Municipality of Mayagüez to refund to Cervecería India, Inc., appellant herein, the municipal license taxes paid under protest for the fiscal years 1947–48 and 1948–49, with costs in the original court.